IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENISE MULLINS,

     Plaintiff,                    No. CIV S-05-0781 KJM

     vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant.               <u>ORDER</u>

_____/

     Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated November 20, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has fibromyalgia but this impairment does not meet or medically equal a listed impairment; plaintiff's subjective complaints are not reasonably related to the objective medical and other evidence; plaintiff has the residual functional capacity to perform a wide range of sedentary work involving occasional overhead reaching; plaintiff cannot perform her past relevant work; within the framework of Rule 201.11 and consistent with the testimony of the vocational expert, plaintiff is capable of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

performing other jobs that exist in significant numbers in the national economy; and plaintiff is not disabled. Administrative Transcript ("AT") 16-17. Plaintiff contends the ALJ did not accord proper weight to the opinion of a treating physician, improperly evaluated plaintiff's subjective complaints of pain, and improperly used the grids and testimony of a vocational expert.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

III. Analysis

    A. Treating Physician's Opinion

        Plaintiff contends the ALJ did not accord proper weight to the opinion of a treating physician, Dr. Barr. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

        Dr. Barr opined in a form dated May 21, 2004 that plaintiff was extremely limited functionally as a result of fibromyalgia. AT 166-171. If Dr. Barr's assessment were credited, plaintiff could not perform even sedentary work and would have to be found disabled. The ALJ

4

did not accord significant probative weight to Dr. Barr's assessment because there were no new objective abnormalities described in the assessment dated May 21, 2004, and the prior medical records reflecting a last treatment date of May 12, 2003, did not contain findings sufficient to support the assessment. AT 15, 79-80, 82, 90, 116-117, 122, 124, 142-143, 148, 155-156, 158. The ALJ also noted that an examination by another treating physician in the same month as Dr. Barr's assessment found plaintiff with normal gait, limited range of motion due to pain, and normal sensation, reflexes, straight leg raising and pulses. AT 15, 188-189. The ALJ also noted that in July 2004, plaintiff's treating physician refused to excuse her from a court- ordered class of eight hours' duration but recommended she find ways to tolerate the class and suggested use of a cushion. AT 15, 187, 192. In discounting Dr. Barr's assessment, the ALJ also relied on the opinions of the state agency physicians who assessed plaintiff with a light residual functional capacity, but properly accorded some weight to plaintiff's subjective complaints and thus found plaintiff could perform only sedentary work. AT 16, 130-137. On this record, the reasons set forth by the ALJ for not according Dr. Barr's opinion significant probative weight are specific and legitimate.

    B. Credibility

        Plaintiff also contends the ALJ improperly evaluated her complaints of pain. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

        In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment,

5

the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

        Plaintiff testified she stopped working in August 2002 because she was in extreme pain from her neck down to her lower back.  AT 203.  She testified she has excruciating pain all the time, that it was an "aching" pain, and that it made her "inoperable" to doing things.  AT 224-226.  The ALJ rated plaintiff's credibility as only fair and noted that plaintiff's disability claim appeared to be centered on her ability to obtain financing for a home loan.  AT 15, 84, 95.  The ALJ also considered the conservative nature of plaintiff's medical treatment and that there were no documented disabling side effects of the medication.  AT 15, 232.  The ALJ also factored into his credibility analysis plaintiff's activities of daily living, which included cooking,

1  housekeeping, shopping, gardening and craft activities.  AT 210, 211, 213, 214, 227-228.  The

2  factors considered by the ALJ all were valid and supported by the record.  The ALJ's credibility

3  determination was based on permissible grounds and will not be disturbed.

4        C.  Grids and Vocational Expert Testimony

5        Plaintiff also contends the ALJ improperly used the grids[2] and the testimony of a

6  vocational expert.  In this case, the ALJ used grid rule 201.11 as a framework for decision

7  making and also relied on the testimony of a vocational expert in finding plaintiff is not disabled.

8  AT 16-17.  The vocational expert testified plaintiff had transferable skills for her past relevant

9  work experience as an employment clerk.  AT 235.  Thus the grid rule relied on by the ALJ

10  accurately described plaintiff's previous work experience.  The ALJ found the only nonexertional

11  limitation properly supported by the medical records involved occasional overhead reaching.  AT

12  17 (Finding no. 6).  The nonexertional limitations asserted by plaintiff are unsupported in the

13  medical record, and as discussed above with regard to Dr. Barr's opinion, were properly rejected.

14        In using the grids as a framework for decision making, the ALJ also relied on the

15  testimony of a vocational expert.  Hypothetical questions posed to a vocational expert must set

16  out all the substantial, supported limitations and restrictions of the particular claimant.

---

[2] The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities. Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

1  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all
2  the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant
3  can perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).
4  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate
5  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's
6  determination must be supported by substantial evidence in the record as a whole.  Embrey v.
7  Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

8      The ALJ posed hypotheticals to the vocational expert that included the
9  nonexertional limitation on overhead reaching.  When characterized as limited in overhead
10 reaching to six hours or less per shift, the vocational expert testified there would be a 40 percent
11 erosion in the previously identified 23,000 semi-skilled sedentary jobs and 77,400 unskilled
12 sedentary jobs available in California.  AT 236.  The ALJ also posed another hypothetical, with a
13 limitation in overhead reach to three hours or less per shift, and even under this hypothetical, the
14 vocational expert testified there would still only be a 40 percent erosion with respect to unskilled
15 sedentary jobs.  AT 237.

16     The hypotheticals presented to the vocational expert were accurate, detailed and
17 supported by the record.  See Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir.1999) (ALJ's
18 depiction of a claimant's hypothetical disability must be accurate, detailed, and supported by the
19 record).   The ALJ properly used the Medical-Vocational Guidelines as a framework in
20 conjunction with the vocational expert's testimony to determine there were a significant number
21 of jobs that plaintiff can perform. See Young v. Sullivan, 911 F.2d 180, 185 (9th Cir.1990)
22 (permissible for ALJ to rely on the Guidelines as a framework for decision making).  Because the
23 vocational expert identified 46,440 jobs[3] available to plaintiff, substantial evidence supports the
24 ALJ's finding that plaintiff is not disabled.  See  Moncada v. Chater, 60 F.3d 521, 524 (9th Cir.

---

[3] Forty percent erosion means sixty percent of the jobs are still available: 77,400 unskilled sedentary jobs times .60 equals 46,440 jobs.

8

1995) (2,300 jobs in the county and 64,000 nationwide are sufficient); <u>Barker v. Secretary HHS</u>, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,200 jobs in Southern California are sufficient).

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment or remand is denied, and

2.  The Commissioner's cross-motion for summary judgment is granted.

DATED: September 26, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

006
mullins.ss